30          MORRISON *et al. v.* KING *et al.*          [Sept. T.,

Opinion of the Court. Syllabus.

EDWARD W. MORRISON *et al.*

*v.*

MARY A. KING *et al.*

1. EASEMENT—*what is.* The disposition and arrangement of the several parts of an entire building consisting of several parts, for various uses, for ease and convenience, and with reference to ways, light, and mutual supports, made by the owner in fee during unity of seizin, which are apparent and continuous, and necessary to the reasonable enjoyment of the several parts of the building, will be easements upon severance of title as to the different parts of the building, on the principle that every grant of a thing naturally and necessarily imports a grant of it as it actually exists, in the absence of any thing showing a contrary intention.

2. SAME—*when and how passed.* Such easements, when continuous and apparent during the unity of seizin, upon severance, will pass to the several holders of the premises, unless the contrary is provided for; and each portion of the several premises will pass subject to all the burdens and advantages imposed or conferred by the former owner. The grantees will each take their respective portions as they existed in the hands of the former owner; and the same rule applies to a severance by judicial proceedings for assignment of dower.

3. CONVEYANCE—*what passes by.* Incorporeal hereditaments appendant or appurtenant to land, will pass by a conveyance of the land as an incident thereto. Thus, if a house or store be conveyed, every thing passes which belongs to, and is in use for it, as an incident or appurtenant, without the use of the word "*appurtenances,*" by mere operation of law.

4. ASSIGNMENT OF DOWER—*what passes by.* When premises are assigned to a widow for dower, the assignment, like a deed, without mention of appurtenances, will pass all those things which are incidents appendant or appurtenant thereto; and, in the absence of any restrictions in the pro-

ceedings, it will be presumed that they were taken into consideration by the commissioners and regarded as a charge upon the other portion in favor of that allotted.

5. EASEMENTS—*injury to*—*injunction.* When the owner had so constructed and arranged a large building of three stories, consisting of many apartments, rooms, and offices, devoted to different uses, that certain stairways furnished the only access to the upper stories, and the stairways and halls were lighted by a skylight in the roof, and the same was so continuously used until after his death, when one end of the building, including one-half of the stairways, was assigned to his widow as her dower, and the other portion, including all the sky light, passed to devisees under his will, and the devisees proposed to tear down their part of the building, and erect another in its stead four stories high ; not because of dilapidation, but because it was not of fine enough quality, the effect of which was practically to destroy access to the second story of the widow's portion, destroy all access to the third story, and the lights, and render the rest of the building unsafe by the removal of the necessary supports to the wall, and untenantable, thereby causing great injury and damage : *Held,* that a decree on bill by the widow against the devisees, restraining them from their proposed action, under the circumstances of the case, was proper.

6. EQUITY JURISDICTION.—Where the owners of a part of an entire building propose to tear down their part thereof to the destruction or great injury of the rights of the owner for life of the remaining part of the building, consisting in certain easements established during the unity of seizin, it was held, that a court of equity had jurisdiction to entertain a bill to restrain the injurious act.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. S. K. DOW, for the appellants.

Messrs. HIGGINS, SWETT & QUIGG, and Mr. JOHN J. HERRICK, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The appellee Mary A. King, was, before her marriage with her co-complainant in this cause, the widow of James M. Morrison, who died in 1868, seized of divers parcels of real estate, situate in the city of Chicago, among which were the land and building in question in this suit. This case

was a bill in equity by said widow (her present husband being joined as co-complainant) against appellants, to restrain them from taking down, as they proposed to do, a portion of said building, of which another portion had been allotted to said widow as dower, by which allotment, as she claims, and as incidental thereto, she became entitled to certain easements, or rights in the nature of easements, attached to or charged upon the part of said building proposed to be taken down, and which rights would thereby be wrongfully disturbed or destroyed. On the hearing, upon pleadings and proofs, the court below found in her favor, and perpetually enjoined the interference; from which decree an appeal was taken to this court. The material facts are undisputed. In 1863 and 1864 the said James M. Morrison, being the owner of a plat of ground, situate upon the east side of South Clark Street, with a frontage of one hundred feet and two inches and a depth of eighty feet, constructed a brick building upon and covering the entire plat, but comprising, by its arrangement, five stores three stories in height, with basements. These stores were designated by numbers on the street, viz.: 151, 153, 155, 157, and 159 South Clark Street. The main or lower floors were used for retail stores, and the second and third floors for offices. Each store had a main entrance *from*, with show-windows *upon*, Clark Street, and was separated from the others by a brick wall, making the rooms about twenty feet wide, excepting the stores in Nos. 153 and 155, which were only about seventeen feet wide on account of the stairway; and all were about eighty feet in depth. The entrance from the street to the second story was a common entrance for the whole building, and by a stairway five feet wide, the centre of which was the twelve-inch wall between stores Nos. 153 and 155, so that two feet and a half in width, for the stairway, was taken from store No. 153, and the same width from No. 155.

When the second story was reached by this stairway, access to the offices in that story was had by means of a central hall running lengthwise of the building. From the head of said stairway and said central hall starts another, which afforded

the only access to the third story. The last mentioned stair-
way was four feet in width, and comprising two sections, the
first of which was located wholly upon No. 153, though at the
line between that store and No. 155, and the other section was,
in a similar way, placed wholly upon No. 155. This stairway
conducted from the second story to the third, where there was
also a central hall, like that in the second story. For the pur-
pose of lighting the halls, stairways, etc., there was constructed
a sky-light, four feet by six, in the roof, near said dividing
line, yet wholly in the roof over No. 153.

Having completed the building in the manner stated, James
M. Morrison remained the sole owner, leasing the stores and
offices to divers tenants, who were in the use and enjoyment of
these stairways, etc., under him, until the year 1868, when he
died testate, leaving appellee, Mary A., his widow, who subse-
quently applied to the Superior Court, by petition, to recover
her dower in the lands, etc., of which her husband died seized.
The court adjudged that she should recover; appointed commis-
sioners, who allotted and set off to her the buildings aforesaid,
known as Nos. 155, 157, and 159, and the land on which they
stood, describing the premises by metes and bounds according
to the statute; by which description the centre of the wall divi-
ding Nos. 153 and 155 was made the dividing line. The com-
missioners' report was approved by the court, and she took pos-
session. After the assignment of the widow's dower and she
had taken possession, the appellants, who held the legal title to
Nos. 151 and 153, under the will of James M. Morrison, deci-
ded to take down their part of said building to within four
inches of the dividing line between their part of it and the
widow's; not because the walls were unsafe by reason of di-
lapidation, but to erect a first-class building, four stories high,
with a basement, in the place of their two, which, as well as the
widow's stores, they say, were only third-class.

The obvious and necessary result of carrying appellant's
plan into effect, would have been the practical destruction of
the way, the only means of access to the second and third
stories of the stores of the dowress; because it would have in-

volved the cutting away of one-half of the width of the lower stairway, thus reducing it to a stairway only two and a half feet in width. This would have been too narrow and inconvenient for persons to pass up and down, and would have entirely precluded the passage of furniture for offices to and from the second story and the street. The execution of the plan proposed would have entirely cut off access from the second to the third story, because it would have taken away the whole of the first section of the stairs. It would have totally removed the sky-light, and left the premises without any light from that source; would have deprived them of the necessary support from the part taken away, weakened the end wall, and jeopardized the safety of the building. Subjected to these perils, deprivations, and annoyances, her premises would, at once, have become deserted by her tenants, and not only so, but rendered actually untenantable. And as to the upper stories, this condition would be permanent, unless she subjected herself to the loss and expense of restoring the lower stairway to its original width by taking enough for the purpose from the width of store 155. That being already but about seventeen feet wide, could not spare the space necessary without materially detracting from its rental value. When all this was done, the second story would be unavailable without a new sky-light, and the third story without new means of access, which could be supplied only with great difficulty and expense.

Appellant's counsel insists that, inasmuch as appellee Mary A. King, did not derive her estate from the original owner by *grant*, but took it by metes and bounds under the statute as an allotment for dower, she therefore took nothing by implication; took nothing one inch beyond the boundary line between her portion and No. 153, which line was the centre of the wall between Nos. 153 and 155 and the centre of the lower stairway. From this position he argues that appellants had the clear, legal right to take away any part of their building up to that line, including a portion of the division wall itself, and that, whatever of the alleged easements she could restore or sup-

ply by reasonable labor and expense, she was bound to supply, or do without.

The position is supported neither by principle nor authority.

These arrangements for ease and convenience, such as ways, light, and support, were provided and used by the owner in fee during unity of seizin. They were apparent and continuous. No person of ordinary faculties, dealing with the premises, could fail to observe them. They were necessary to the reasonable enjoyment of the premises, comprising the three stores, in question. It is true, as claimed by counsel, that, while the whole premises remained in the testator, these arrangements for ways, light, support, etc., did not, in any technical sense, amount to easements. Until a severance and the premises were held by separate owners no question of that character need arise. The foundation of the doctrine of easement in this and similar classes of cases is a disposition and arrangement of the premises as to the uses of the different parts, by him having the unity of seizin, and then a severance. It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for, it would seem to follow, that each portion of the severed premises should pass subject to all the burdens and advantages imposed or conferred by the proper owner. Such, certainly, is the tendency of the cases cited by appellees' counsel. *Coppy's Case,* 11 Hen., 7, 25, p. 1, 6; *Nicholas* v. *Chamberlain,* Cro. Jac. 121; *Surry* v. *Pigott,* Poph. 166; *Robins* v. *Barnes,* Hob. 131; *Richards* v. *Rose,* 9 Exeq. 218; *Humphries* v. *Brogden,* 64 E. C. L. 744; *Pyer* v. *Carter,* 1 Hurl. & N. 916; *Eward* v. *Cockrane,* 4 McQueen, 117; *Glave* v. *Harding,* 3 Hurl. & N. 944; *Suffield* v. *Brown,* 33 L. J. Ch. 249.

Some of the American cases cited are : *New Ipswich Factory* v. *Bachelder,* 3 New Hamp. 190; *United States* v. *Appleton,* 1 Sumner, 492; *Eno* v. *Del. Veccheo,* 4 Duer, 53; S. C. 6 Duer, 17; *Webster* v. *Stevens,* 5 Duer, 553; *Hutemeier* v. *Albro,* 18 New York, 48; *Lampman* v. *Milks,* 21 N. Y. 505; *Seibert* v. *Levan,* 8 Penn. Stat. R. 383; *Kieffer* v. *Imhoff,* 26

Ib. 438; *Mc Carty* v. *Kitchenman,* 47 Ib. 239; *Phillips* v. *Phillips,* 48 Ib. 178; *Hadden* v. *Shoutz,* 15 Ills. 581.

It has been deemed a needless task to present an analysis of these cases. These cases, and others, embody a current of authority, holding that an easement may be created by the disposition made of premises by the owner of the estate, and that, upon a severance of the title, the owners will take their respective shares as they existed in the hands of the former owner. *Seymour* v. *Lewis,* 2 Beaseley, 439. And we are of the opinion that it is not pushing the doctrine too far to apply it to a severance by judicial proceedings for assignment of dower. *Kelgour* v. *Ascham,* 5 Harris and J. 82, and *Burwell* v. *Hobson,* 12 Grat. 322, were cases where partition was made by commissioners, and the doctrine applied. There can exist no valid reason why easements should not pass as incident to an estate vested by legal proceedings, as in the cases of assignment of dower, and partition among heirs, as by a conveyance which makes no reference to appurtenances.

"In corporeal hereditaments *appendant* or *appurtenant* to land as common of piscary and of pasture *and right of way,* pass by a conveyance of the land to which they are annexed, without even mention of the appurtenances." Co. Litt. 121, b.

"Some things," says Kent, "will pass by the conveyance of land as incidents, appendant or appurtenant thereto. This is the case with the right of way or other easement appurtenant to land * * and if a house or store be conveyed every thing passes which belongs to, and is in use for it, as an incident or appurtenance." 4 Kent's Com. 467. So in *United States* v. *Appleton, supra,* Story J., said: "It is observable that in this case reliance is placed on the language 'with all the ways,' etc. But this is wholly unnecessary; for whatever are properly incidents and appurtenances of the grant, will pass without the word 'appurtenances,' *by mere operation of law.*" The 25th section of the statute concerning dower, (R. S. 1845, p. 202,) provides that the commissioners shall

make return, in writing, under their hands and seals to the court; " which, if approved by the said court, *shall vest in her* an estate in the lands and tenements so set off and allotted to her, for, and during her natural life; or if such estate shall have been set off and allotted to said widow by virtue of section 15, of this chapter, such estate shall be vested in her absolutely in fee simple, and of inheritance forever, subject to her absolute use, control, and disposition, as though her interest therein had been acquired by her when *sole*."

In this case the allotment was not made under the 15th section. But the return of the commissioners, in writing, under their hands and seals, with the approval of the court, vested in Mary A. King an estate in the lands and tenements so set off and allotted to her, for and during her natural life. Now, can it be successfully maintained, that in such a case, or one under the 15th section, the proceeding under the authority of the law, which has the effect in one case to vest the widow with a life estate, and in the other, with an absolute estate in fee simple, shall not have the effect to pass any of those things as incidents appendant and appurtenant to such lands and tenements, as would pass by a conveyance without mention of appurtenances? We think not. It seems to us to be a reasonable rule, consistent alike with justice and the analogies of the law, that where the severance of an estate consisting of two or more heritages occurs by reason of the death of the common owner, and the laws of descent and of dower, and an allotment of the latter is made under the statute, the dowress, in the absence of any restrictions in the proceedings, should be entitled to take the portion allotted to her as it existed at the time. If conveniences provided for such portion by the common owner were continuous and apparent, and necessary to the reasonable enjoyment of it, they will be presumed to have been taken into consideration by the commissioners, and regarded as a charge upon the other portion, in favor of that allotted, and as passing with the estate by operation of law.

We are of opinion that equity had jurisdiction, and that the

case was properly disposed of by the court below, and its decree should be affirmed.

*Decree affirmed.*