The Washburn & Moen Manufacturing Company

*v.*

The Chicago Galvanized Wire Fence Company.

*Filed at Ottawa January 23, 1884.*

1.  PAROL EVIDENCE—*in contradiction of written contract—as to whom
the rule obtains.*  The rule that the terms of a written contract must be shown
by the writings alone, and that oral testimony exhibiting the various negotia-
tions between the parties leading up to its consummation is to be excluded,
applies only as between the parties to written instruments, and those claim-
ing under them.  Strangers to a written instrument, when their rights are
concerned, are at liberty to show by parol evidence that the contract of the
parties is different from what it purports to be on the face of the writing.

2.  Thus, where a company claiming a patent upon an invention, settled
and adjusted a suit brought by it against another for an infringement of the
patent, and gave a license to manufacture under the patent upon payment of
a certain royalty by the licensee, the contract providing that in case of any
subsequent licenses being granted at a less royalty, the first licensee should
only pay such reduced rate, on a bill by the latter to enforce such agree-
ment he was allowed to show by parol that a subsequent contract of settle-
ment with another party, which on its face appeared to be a grant of a license
free of royalty, in payment of the price for certain other patents transferred
to the licenser, was but a contrivance and device to cover up and conceal the
fact of a grant of a license without royalty, or at a reduced rate.

3.  SPECIFIC PERFORMANCE—*contract as to royalty under patent right—
of the rate to be paid in case of subsequent contracts with others at a
reduced rate.*  The holder of letters patent for the manufacture of barbed

fence wire gave the complainant a license to manufacture 1200 tons annually of the fence wire, at a royalty of seventy-five cents per hundred pounds manufactured, the licenser fixing the price at which the barbed wire should be sold, and agreeing, in case of any subsequent licenses being granted at a less royalty, the first licensee should not be required to pay any more than such subsequent licensee. Afterwards, the licenser granted a license to another, by which the latter was authorized to manufacture a given number of tons of the same wire free of royalty, and a like amount for a reduced royalty. On bill by the first licensee to specifically enforce the contract to reduce the royalty, it was urged that as the complainant had sold all the wire he was allowed to manufacture, he was not injured by the grant of the subsequent license: *Held,* that the question of damages was not involved, but the royalty the complainant was to pay,—whether he was to pay that originally agreed to be paid, or the reduced rate in the subsequent license, and that such a contract was enforceable.

4. A granted a license to B to manufacture 1200 tons of barbed wire fence, for which B was to pay A a royalty of seventy-five cents on the hundred pounds, under a contract that if A granted any licenses in the future at any lower royalty, then B was to have the benefit of such reduction, and pay only the same royalty. Afterward, A granted a license to C, giving him the privilege of manufacturing 10,000 tons of the barbed wire, the first 4000 tons to be free of royalty, and C to pay fifty cents royalty on the next 4000 tons he might manufacture, and seventy-five cents on the remaining 2000 tons. B filed his bill against A to enforce the agreement to reduce the royalty, upon the hearing of which the court granted the relief sought, decreeing that B should not be required to pay any royalty on any part of the wire made by him. C was not bound to manufacture more than 4000 tons yearly, and the proof showed that up to the time of the hearing C had not manufactured in excess of 4000 tons: *Held,* that if C manufactured in excess of 4000 tons, so that he paid a royalty, B also should pay a proportionate one, and that in respect of such subsequent manufacture by C the decree should be modified, allowing two-tenths of B's manufacture to go free, and charging him, as to the residue, the same as C was to pay.

5. Patent right—*part owner may use same without consent of the others.* Each of the several owners of letters patent, without the concurrence of all the owners, may lawfully exercise and use the patent privilege.

6. Parties—*objection for want of parties—of the proper time—and whether it should avail.* Where objection to the non-joinder of a person as a party defendant in chancery is not taken by demurrer, or by plea or answer, and is first made at the final hearing, it is not favorably received; and in such case, to be of avail, it must appear that the decree will have the effect of depriving the omitted party of his rights.

7. Same—*on bill for specific performance.* It is a general rule that no persons are necessary parties to a bill for the specific performance of a con-

tract except the parties to the contract itself. The rule that all persons having an interest in the subject matter of the litigation must be made parties, does not have full application to such a bill.

8.  On bill by a licensee under letters patent to enforce specifically a contract to reduce the royalty to be paid upon a contingency, a person having an interest in the letters patent, but not a party to the contract, and having no interest in the royalty to be paid appearing from the pleadings or evidence, is not a necessary party.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. W. C. GOUDY, for the appellant:

The evidence showing the abortive attempts to settle with Haish was not admissible. All prior negotiations were merged in the written contract, which is supposed to be the true expression of what the parties eventually agreed upon. In the settlement with Haish appellant acquired the full control of his valuable patents, and a release of all damages for past infringement of them.

The complainant has suffered no injury by reason of the settlement with Haish, and it will suffer none. The decree allows the complainant to manufacture on better terms than Haish secured, and reduces the royalty to a less amount than was allowed to any licensee since January 1, 1881.

Ellwood was an indispensable party to the bill, being the owner of one-half of the patents embraced in the license to the complainant, and entitled to receive a part of the royalty. This objection is good on the hearing, or on appeal or error. *Spear* v. *Campbell*, 4 Scam. 426; Story's Equity Pleading, secs. 236, 541; *Mallows* v. *Hinds*, 12 Wheat. 193; *Hallett* v. *Hallett*, 2 Paige, 15; *Herrington* v. *Hubbard*, 1 Scam. 569; *Prentice* v. *Kimball*, 19 Ill. 322; *Lynch* v. *Rotan*, 39 id. 14; *Atkins* v. *Billings*, 72 id. 597; *Hopkins* v. *Roseclare Lead Co.* id. 377.

Mr. W. P. BLACK, and Mr. GEORGE C. FRY, for the appellee :

In bills for specific performance of contract, only the parties to the contract are proper or necessary parties, and therefore Isaac L. Ellwood was not a necessary party to this proceeding.    Story's Equity Pleading, sec. 74 a ; Fry on Specific Per. sec. 79 ; Barbour on Parties, 334 ; Story's Equity Pleading, sec. 226 b ; 1 Daniell's Chancery Prac. 230 ; Waterman on Specific Per. sec. 58 ; Batton on Contracts, 324, p. 181 ; Pomeroy on Contracts, 544, sec. 483 ; *Gibbs* v. *Blackwell,* 37 Ill. 191 ; *Smith* v. *Sheldon,* 65 id. 219 ; *Roby* v. *Cossitt,* 78 id. 638 ; *Tasker* v. *Small,* 3 M. & C. 63 ; *Mole* v. *Smith,* Jac. 490 ; *Chapman* v. *West,* 17 N. Y. 125 ; *Humphreys* v. *Hollis,* 1 Jacobs' Ch. 73.

If Ellwood were a necessary party, that objection should properly have been raised in the court below, by demurrer, plea or answer.    Story's Equity Pleading, secs. 74, 236, 237, 541 ; *Allen* v. *Woodruff,* 96 Ill. 11 ; *Prentice* v. *Kimball,* 19 id. 320 ; *Conwell* v. *Watkins,* 71 id. 488 ; *Home Ins. Co.* v. *Myer,* 93 id. 274 ; *Howell* v. *City of Peoria,* 90 id. 104 ; *Knapp* v. *Marshall,* 26 id. 63 ; *Thomas* v. *Adams,* 30 id. 37 ; *Booth* v. *Wiley,* 102 id. 84 ; *Scott* v. *Bennett,* 1 Gilm. 646 ; *Milligan* v. *Milledge,* 3 Cranch, 219 ; *Story* v. *Livingston,* 13 Pet. 359 ; *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285.

It is competent for any one of the joint owners of letters patent to issue such a license, and in such case neither the licenser nor licensee can be interfered with, or compelled to account to the joint owner not a party to the license.    Curtis on Patents, (4th ed.) secs. 189, 191 ; Williams on Real Prop. 307 ; *Clum* v. *Brewer,* 2 Curtis, 506 ; *Vose* v. *Singer,* 4 Allen, 226 ; *Mathers* v. *Green,* 1 Law Rep. 29 ; *De Witt* v. *Manf. Co.* 12 N. Y. (5 Hun,) 302 ; *Same case,* 66 N. Y. 459 ; *Dunham* v. *Railroad Co.* 7 Biss. 223 ; *Edwards* v. *Normandy,* 3 N. R. 562 ; *Same case,* 12 W. R. 548 ; *Gates* v. *Frazer,* 9 Bradw. 624 ; *Parkhurst* v. *Kinsman,* 1 Blatchf. 496 ; Hindmarch on Patents, 67, 236 ; Bump on Patents, 141 ; *May* v. *Chaffee,* 2 Dill. 385.

Appellee was properly permitted to show that the entire agreement of settlement, in connection with which it received its license, was not expressed in such license. *Gammon* v. *Huse*, 100 Ill. 234; *Ludeke* v. *Sutherland*, 87 id. 481; *Morris* v. *Tillson*, 81 id. 607; *Mann* v. *Smyser*, 76 id. 365; Phillips on Evidence, 657; *Clifford* v. *Turrell*, 2 Y. & Col. Ch. Cases, 148; *Shaw* v. *Leavitt*, 3 Sandf. Ch. 178; *Tyler* v. *Disbrow*, 40 Mich. 415; *Morgan* v. *Griffith*, 6 L. R. (Exch.) 70; *Combs* v. *Bradshaw*, 6 Bradw. 115; *Same case*, 102 Ill. 428; *Hersom* v. *Handerson*, 1 Foster, 224; Greenleaf on Evidence, secs. 26, 284a, 285, 304.

Appellee is not bound by the statements contained in the papers executed between appellant and Haish, appellee being neither a party nor privy thereto. 2 Parsons on Contracts, 556, 557; *Krider* v. *Lafferty*, 1 Whart. 303; *Strader* v. *Lambeth*, 7 B. Mon. 589; *Reynolds* v. *Magness*, 2 Ired. L. 26; *Edgerly* v. *Emerson*, 23 N. H. 555; 1 Greenleaf on Evidence, sec. 279; *Taylor* v. *Baldwin*, 10 Barb. 582; *Venable* v. *Thompson*, 11 Ala. 147; *Badger* v. *Jones*, 12 Pick. 371; *Overseers* v. *Overseers*, 10 Johns. 229.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

Prior to December 15, 1880, the Washburn & Moen Manufacturing Company, having acquired the control of various patents for the making and use of barbed fence wire, brought various suits in the United States Circuit Court for the Northern District of Illinois, against alleged infringers of its patents, and the causes having been heard on that day, a finding was announced by the court in favor of the company, sustaining its patents. The final decree was actually entered on April 25, 1881. There were two sets of suits,—two suits against each defendant,—in one of which said company was the sole complainant, and in the other the company and Isaac L. Ellwood were complainants, jointly.

Soon after the announcement of the finding of the court, all the defendants in those suits except Jacob Haish, and also other alleged infringers, settled with the Washburn & Moen Manufacturing Company, and in all cases except two (one omitted by inadvertence, and in the other the patent being regarded valueless,) it took from the parties assignments of the patents held by them, and the parties took licenses from the company, and agreeing to pay royalty on future manufacture. On January 24, 1881, the said company made a settlement with the Chicago Galvanized Wire Fence Company, one of the defendants in said suits, and issued to it a written license for the manufacture and sale of 800 tons annually of barbed fence wire, (afterward increased to 1200 tons,) upon payment of a royalty of three-fourths of a cent on each pound. The tenth clause of the license contained the provision: "And the royalty to be paid under this license shall not be greater than that charged to any other party licensed after the first day of January, A. D. 1881, under the said several letters patent" named in the license; and that in case a license should be given to any party at a less royalty, that "then and thereafter the royalty to be paid under this license shall be the same as such reduced royalty."

On September 27, 1881, the said Chicago Galvanized Wire Fence Company filed its bill in equity in the Superior Court of Cook county, against the Washburn & Moen Manufacturing Company, for the purpose of obtaining the specific enforcement of said clause ten in the aforenamed license, the bill alleging a certain settlement, made after the issuance of said license, by the Washburn & Moen Manufacturing Company with Jacob Haish, one other of the defendants in the suits above named, under the terms of which settlement it was alleged Haish was licensed to manufacture barbed fence wire to the extent of 4000 tons annually, free of royalty, under that company's patents, and the bill prayed allowance

to complainant of the benefit of all reduction of royalty made to said Haish. The court below decreed in favor of the complainant. The decree was affirmed on appeal to the Appellate Court for the First District, and the defendant appealed further to this court.

The settlement with Haish was consummated on the 26th day of July, 1881, and was attended with the execution of the following writings :

*First*—A license from the Washburn & Moen Manufacturing Company to Haish, in terms substantially identical with those to other licensees, authorizing the manufacture of 10,000 tons of barbed fence wire yearly, at three-fourths ($\frac{3}{4}$) of a cent per pound royalty.

*Second*—An assignment by Haish of the various patents held by him, pertaining to the business of manufacturing barbed fence wire, to the Washburn & Moen Manufacturing Company and I. L. Ellwood.

*Third*—An exclusive license to Haish for the making, using and selling of barbed fence wire under the patents so assigned by him, without royalty.

*Fourth*—A license to Haish for the use of the Stevens machine for barbing wire, without royalty.

*Fifth*—A release from the Washburn & Moen Manufacturing Company and Ellwood, to Haish, of all claim for damages for infringement of fence wire patents owned or controlled by them, or either of them.

*Sixth*—A release by Haish to the company and Ellwood of all similar claims.

*Seventh*—An agreement between Washburn & Moen Manufacturing Company and Haish, reciting the purchase from and conveyance by Haish of his patents, his release of claims for damages, and his acceptance of a license from the company, and then providing, in substance, that the company, by itself or licensees, will manufacture 8000 tons of barbed fence wire every year until February 27, 1894, and pay to

Haish until that time seventy-five cents per hundred pounds upon the wire so manufactured, not exceeding 4000 tons each year, and a further sum of twenty-five cents per hundred pounds on any excess over that amount each year, up to 4000 tons, but not exceeding that; that the company should not, however, pay any part of such sum to Haish, unless he shall have first paid or tendered the company, as royalty, under his license from the company, a sum equal to the amount he shall demand from the company.

At the same time the Washburn & Moen Manufacturing Company paid Haish, in cash, $10,000, (the amount he had paid for the Stevens machine invention,) and agreed that Haish might withdraw from the court the $25,000 which had been paid in by him to cover damages for infringement in his manufacture up to the entry of the final decree, and that a decree for nominal damages should be entered in the suit of the company against Haish, without costs to either party. The similar suit in which the Washburn & Moen Manufacturing Company and Ellwood were complainants, and Haish defendant, was also disposed of in the same manner.

The main controversy in this case is upon a question of fact as to what was the real character of this transaction of the 26th of July, 1881. The contention of appellee is, that the real arrangement with Jacob Haish was a mere settlement of a troublesome litigation upon a basis of an allowance to Haish of the right to manufacture 4000 tons of barbed fence wire per annum, free of royalty, with an abatement of twenty-five cents per hundred pounds upon the royalty exacted from other licensees, upon his annual manufacture above 4000 tons, up to 8000, the arrangement being concealed under a pretended purchase of Haish's patents, payment for which was to be made practically in a rebate of the royalties nominally exacted from Haish under the license issued to him.

There is a preliminary question raised as to the admissibility of evidence, it being contended by appellant that the writings alone are to be taken to show what the real contract was, and that the oral testimony exhibiting the various negotiations between the parties, leading up to the settlement, is not to be considered. The rule of evidence under which this is urged, applies only as between the parties to written instruments, and those claiming under them. Strangers to a written instrument, when their rights are concerned, are at liberty to show, by parol evidence, that the contract of the parties is different from what it purports to be on the face of the writing. 2 Parsons on Contracts, 556, 557; *Krider* v. *Lafferty*, 1 Whart. 303; *Strader* v. *Lambeth*, 7 B. Mon. 589; *Reynolds* v. *Magness*, 2 Ired. L. 26; *Edgerly* v. *Emerson*, 23 N. H. 555.

The oral testimony on the part of the respective parties detailing the negotiations which preceded the settlement, was conflicting. That on the side of appellee quite satisfactorily marks the transaction as of the character contended by appellee, while that on the part of appellant goes to show that the arrangement was an actual purchase by appellant of very valuable patents from Haish, which it was important to acquire, and that the provision as to the payment for the patents acquired from Haish, by a repayment of royalties received from Haish, was a *bona fide* mode of such purchase. We shall not undertake to go into a discussion in detail of the voluminous mass of evidence in the case, and will but advert to some circumstances as giving corroborative force to the testimony on the part of appellee as to the character of the settlement made with Haish.

Although in the suits above named the decree was in favor of the Washburn & Moen Manufacturing Company, in the United States Circuit Court, the litigation was liable to be continued by taking the decree to a higher court for review, and it seemed a desirable thing to effect a settlement of the

matter. Settlements were made with all the other defendants. Haish alone stood out, and threatened to continue the litigation. The defendants in the suits were all liable, under the decree, for damages for past infringement. The settlements embraced the adjustment for past damages and license for future manufacture. The settlements were uniform in the respect of license for future manufacture,—of the exaction of a royalty of seventy-five cents per hundred pounds of annual manufacture, and of limit of amount of manufacture, but the extent of the limit varying; and there was a general uniformity as to past damages, they being fixed at sixty cents per hundred pounds of manufacture, the parties to assign all patents they held, and to be allowed therefor in abatement from past damages, varying from ten cents per hundred pounds manufactured, to nothing, according to the value of the patents, and such value entered into consideration in fixing the amounts of tonnage in licenses given.

It appears that on April 25, 1881, immediately after the court had settled finally the terms of the decree, the principal attorney of the Washburn & Moen Manufacturing Company made to the attorneys of Haish a proposition of settlement, upon the basis of a release from all liability for past infringement and a free license for the future. Upon that basis negotiations thenceforward proceeded, until the consummation of the settlement on July 25, 1881. It appears to have been made the subject of quite anxious concern and study, after essentials had been agreed upon, as to the form in which the papers should be cast, to avoid, as there may be reason to think, the appearance of a reduction of royalty to Haish. A form of written request to the Washburn & Moen Manufacturing Company to purchase from Haish his patents and claims, and arrange for the payment for the same out of the royalties to accrue from Haish under his license, was prepared for signature by the company's licensees, they being about forty in number, and the signatures to it of all of them but three

were obtained, appellee being one of the three. Upon the execution of the papers, on July 25, Mr. Washburn requested that the matter be kept secret for a time, to give opportunity to procure the consent of licensees. This tends to show a consciousness of the parties that there was a reduction of royalty to Haish, and a necessity of obtaining the consent of the licensees, so as to preclude them from avail of the benefit of such reduced royalty under the provisions of their licenses in that regard.

Haish assigned his own patents and the Stevens machine patent. The thing of chief value in Haish's properties, according to the evidence, was what is called his "S" barb patent; but he took back an exclusive, unlimited license to make, use and sell under all his own patents that he assigned, without royalty. As to the Stevens machine patent, the evidence tends to show the Washburn & Moen Manufacturing Company to have been the owner of an undivided half of that before and at the time of Haish's assignment to the company, and we understand the law to be that each of the several owners of letters patent, without the concurrence of the joint owners, can lawfully exercise and use the patent privileges, and license others to do so. (*Clum* v. *Brewer*, 2 Curt. C. C. Rep. 307; *Dunham* v. *Railroad Co.* 7 Biss. 223; *Vose* v. *Singer*, 4 Allen, 226; *Mathers* v. *Green*, 1 L. R. (Ch. App.) 29; Curtis on Patents, secs. 189, 191.) And besides, Haish was granted a license under the Stevens machine patent, without royalty. Haish did get from the Washburn & Moen Manufacturing Company $10,000 cash. He withdrew the $25,000 deposit in court to cover damages for infringement accruing pending the litigation. He was released from all other back damages for infringement, which seem to have been estimated, upon some basis of calculation, at $82,000, in addition to the $25,000. Additional to this, the payment back to Haish of the amount of the royalty which he pays under his license in the manufacture of 4000 pounds, and

6—109 Ill.

one-third of that he pays on the next 4000 pounds, (amounting to $80,000 a year, as calculated by counsel, if Haish manufactured to that full limit,) would be the allowance of a consideration for the transfer of Haish's patents quite disproportionate, in our opinion, to any fair value of them, under the circumstances, upon any showing of the evidence, and indicative that such repayment of royalty was not in truth the consideration given for the purchase of the patents.

The court below found that the purchase of Haish's patents and the Stevens machine patent was a secondary matter, and was used to give the appearance of a consideration to what was in reality a license free of royalty for the manufacture of 4000 tons, yearly, of barbed wire, and of 4000 more tons at a less rate, by twenty-five cents per hundred pounds, than to the other licensees, and so a reduction to that extent, of which appellee had a right to avail itself under its license. Without further remark upon the evidence, we state as our conclusion, upon its examination, that we do not find reason sufficient for disturbing the decree on the ground of the finding of the court not being warranted by the testimony.

It is insisted by appellant that even if it be true that it has granted a license to Haish for the manufacture of 4000 tons free from all royalty, appellee has not a right to maintain the present bill, for the reason that it has not sustained any pecuniary injury from the grant of such a license to Haish; that as by the terms of the license the Washburn & Moen Manufacturing Company alone fixes the price at which the barbed wire shall be sold, and as appellee has sold all the wire it was permitted to manufacture, by the terms of its license, at the established price at which all licensees were required to sell, it would be a matter of entire indifference to appellee whether Haish or any other licensee was charged a royalty or not. That is not the question whether appellee sustains damage from a reduction of royalty to any one else, but the question is as to the amount of royalty appellee is to

pay under its license,—whether it is entitled to the benefit of
the promise made to it, upon valuable consideration received,
that if appellant should license any other party at a less
royalty than that exacted of appellee, then, thereafter, the
royalty to be paid by appellee should be the same as such
reduced royalty.   If there has been a reduction of royalty to
Haish, then clearly appellee, under its contract, is required
to pay only such reduced royalty.

It is objected to the decree that it reduces appellee's roy-
alty to a less amount than that of Haish.   Appellee, by its
license and a subsequent agreement, was authorized to manu-
facture 1200 tons.   The license to Haish authorized him to
manufacture 10,000 tons.   Appellee was to pay a royalty of
seventy-five cents per one hundred pounds on the whole of
its 1200 tons.   Haish, on the other hand, according to the
finding of the decree, was to pay no royalty at all on 4000
tons, a royalty of fifty cents on 4000 tons, and a royalty of
seventy-five cents per hundred pounds on the last 2000 tons
of his tonnage,—that is, taking all his tonnage together, he
was authorized to manufacture, free of royalty, two-fifths of
his gross tonnage, but was to pay a royalty of fifty cents per
hundred pounds on the next two-fifths, and a royalty of
seventy-five cents per hundred pounds on the remaining one-
fifth; hence it is said, that on the theory of the court below,
and upon the principle of equality of royalties, appellee should
be exempt from royalty as to two-fifths of its tonnage, and
subject to a payment of fifty cents on the hundred pounds
royalty on the second two-fifths of its tonnage, and a royalty
of seventy-five cents per hundred pounds on the last one-fifth,
but that instead of doing so the decree gives to appellee the
whole amount of its tonnage free from any royalty.   There
is force in this view, and we think that if Haish manufac-
tured up to the full limit of his tonnage, it would have to be
acceded to.   He certainly, then, would have some royalty to
pay, and the reduction of appellee's royalty to an equality

with that of Haish would not exempt appellee from payment of any royalty at all. There can not be the claim that each licensee was entitled to an equal amount of tonnage. There was to be a limitation as to tonnage, and the several amounts to be allowed to each licensee were to be determined by the licenser; but Haish was not bound to manufacture more than 4000 tons yearly, and to the extent of 4000 tons yearly he had a free license,—whether he would manufacture in excess of that was optional with him. The proof shows that up to the time of the hearing in the Superior Court, his yearly manufacture did not exceed 4000 tons, so that upon what he manufactured he paid no royalty, upon the theory of the decree, and so far the decree was right in exempting appellee from the payment of royalty; but if in the future, subsequent to the hearing, Haish should manufacture in excess of 4000 tons yearly, he would have to pay royalty, under the provisions of his license, which, if he manufactured to the limit of his license, would be fifty cents per hundred pounds on the second two-fifths of his manufacture, and seventy-five cents per hundred pounds on the last one-fifth. As respects, then, any future manufacture by Haish which might be in excess of 4000 tons yearly, we are inclined to think appellee should be required to pay the same proportionate royalty as Haish would have to pay, so that there should be the same ratio of royalty to tonnage manufactured in the case of appellee as in that of Haish, and that in the respect of any such future manufacture the decree should be modified accordingly.

It is objected further, that Ellwood was an indispensable party, and no decree could be rendered in his absence. The license in this case is a license by the appellant, as the sole licenser, to the Chicago Galvanized Wire Fence Company, as the licensee, and the bill is filed against appellant to secure the specific enforcement of a covenant in the license, made by appellant with appellee, that appellee should have the benefit of any better terms as to royalty given by appellant

to any other licensee after the 1st of January, 1881. Ellwood appends to the license his consent to and approval of the same, but this does not make him a party to the license, nor a necessary party to the bill. The proof shows that Ellwood was a joint owner with appellant of the Glidden patent,— one of the most important of the series of patents under which the license was granted,—and that he was interested, to some extent, in the other patents, or part of them. This might be, and yet Ellwood have no interest in the royalty payable under this license. It neither appears upon the face of the bill, nor by averment in any pleading, or by any showing of proof, as we read it, that Ellwood had any interest in this royalty, and it is this royalty only,—the amount of it,— which is the subject matter of this suit. The right in or validity of the patents is in no way involved. The objection of the non-joinder of Ellwood as a party was not taken by demurrer, or by plea or answer, and was first made at the final hearing. When thus delayed such an objection receives less favor from the court, and in such cases, to be of avail it must appear that the decree will have the effect of depriving the party omitted, of his legal rights. (*Schwoerer* v. *Boylston Market Association*, 99 Mass. 285.) It does not so appear in the present case.

· The general doctrine referred to by appellant's counsel in support of the objection that all persons having an interest in the subject matter of the litigation must be made parties, has not full application to cases, like the present, for the specific performance of contracts. The general rule is, that to a bill for the specific performance of a contract no persons are necessary parties except the parties to the contract itself. (Fry on Specific Per. sec. 79; Pomeroy on Contracts, sec. 483, and cases cited; *Willard* v. *Taylor*, 8 Wall. 557.) Mr. Pomeroy says this is the well settled general doctrine in England, and has been followed by some of the American decisions, though the tendency of the latter decisions is towards

the adoption of a more comprehensive rule. In section 492 he lays it down that in general, when the vendor is a trustee, his *cestuis que trust* need not be joined as co-defendants. *Gibbs* v. *Blackwell*, 37 Ill. 191, was a bill filed for the specific performance of a contract for the conveyance of real estate by the heirs of the vendee. The vendor interposed, by way of defence, that he held the property in trust for John Gibbs, an idiot, and that the land was paid for by said idiot's funds, and insisted the bill ought to have been dismissed for want of proper parties. This court held that John Gibbs was not a necessary party. Furthermore, if Ellwood were interested in the royalty, his written consent to and approval of the contract as made, in the name of the Washburn & Moen Manufacturing Company, was virtually a consent that that company should stand and be taken as the representative party in the agreement, and amounted to a waiver of any claim of right of himself to be made a party in any litigation in respect of the contract. We find no error in not making Ellwood a party.

For the purpose of a modification of the decree in the manner above indicated, the decree will be reversed, and the cause remanded for further proceedings in accordance with this opinion. Each party will pay its own costs in this court.

*Decree modified.*

Mr. Justice Walker: I am unable to concur in the opinion in this case.

Mr. Justice Dickey also dissents. See his opinion at the close of this volume, page 673.