(No. 12446.—Reversed and remanded.)
ALGIE P. GULICK et al. Appellants, vs. CHARLES FENTON
HAMILTON, Appellee.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. PARTIES—*when non-joinder of defendant in equity may be raised for first time on appeal.* All persons materially interested, either legally or beneficially, in the subject matter of a suit in equity and the relief asked for must be made parties, and the non-joinder of a defendant whose interest will be materially affected by the decree may be raised for the first time on appeal.

2. SAME—*when, only, will decree be reversed on objection to non-joinder of defendant raised for first time on appeal.* An objection to the non-joinder of a defendant in equity, when raised for the first time on appeal, is never favored, and a decree will be reversed on such objection only where the interest of the omitted party is a present substantial one and where a decree will result in depriving such party of some material right without a hearing.

3. SAME—*when mortgagee is not necessary party to proceeding to enjoin obstruction of alley.* A proceeding for an injunction is personal against the individual, and in a proceeding to enjoin the erection of a building which obstructs the right of way in an alley a mortgagee whose interest is less than the value of the property without the building is not a necessary party.

4. EASEMENTS—*easement will be construed to be appurtenant, if possible.* An easement is never construed to be in gross and purely personal when it can fairly be construed to be appurtenant.

5. SAME—*an easement which is appurtenant runs with the land.* An easement which is appurtenant runs with the land and passes by a conveyance without any reference to it.

6. SAME—*when conveyance of portion of property divided into lots is subject to easements.* Where the owner of a tract of land has divided it into different parts, as lots and alleys or ways, in such a manner that one part derives from another an advantage of a permanent, open and physical character, and the owner afterwards sells a part of the property, the purchaser takes the part sold with all the benefits and burdens which appear at the time of sale.

7. SAME—*when complainant is not estopped to enjoin obstruction of alley.* The fact that complainants have areaways and an unloading chute which extend into an alley but do not interfere with its beneficial use as a right of way will not estop them from enjoining the complete obstruction of the alley by the erection of a building thereon, though they may be compelled to remove the areaways and chute.

8. SAME—*when expense to wrongdoer will not prevent removal of obstruction.* In a proceeding to enjoin the erection of a building which obstructs the right of way in an alley, a defendant who has notice of the existence of the alley and the complainants' rights by his own chain of title cannot, by incurring the expense of completing his building after notice by the complainants not to invade their rights, deprive the court of the right to compel the removal of the building, even though no temporary injunction was asked for.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

DOBBINS & DOBBINS, for appellants.

GREEN & PALMER, and WALTER B. RILEY, (HENRY I. GREEN, and ORIS BARTH, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, Algie P. Gulick and Seeley C. Gulick, filed their bill in the circuit court of Champaign county to enjoin the appellee, Charles Fenton Hamilton, from obstructing an alleged alley on the west 10 feet of lot 12, in block 7, in Farnham, Clark & White's addition to Urbana, (now a part of the city of Champaign,) and to compel him to remove therefrom obstructions placed thereon by him. The defendant answered denying the existence of the alleged alley, and the issue was referred to the master in chancery to take the evidence and report the same, with his conclusions of fact and law. The master took the evidence and reported the same, and, after reciting the various deeds under which the complainants claimed the existence of the alley, reported his conclusion of law that the deeds created no right, title or interest in the complainants whereby they were entitled to compel the defendant to keep open 10 feet for an alley. He further reported as a matter of fact that in 1915 the defendant commenced the erection of a building upon the premises covering the 10-foot strip, and when notified to stop erecting the same the walls were erected to a height of more than twenty feet and contracts had been

awarded for the erection of the building, and the change in the plans of the architect and the change in the specifications would have caused great expense to the defendant, and that the complainants had encroached upon the 10-foot strip with areaways built out eighteen inches and an unloading chute or cellar entrance projecting into the strip approximately three feet and six inches, and that the travel over the strip had not been confined to any particular line. He also reported that the Trevett-Mattis Banking Company held a mortgage on the premises and was not made a party to the cause, and he recommended that a decree should be entered dismissing the bill for want of equity. The cause was heard by the chancellor on exceptions to the report, and the exceptions were overruled and the bill dismissed at the cost of the complainants. From that decree this appeal was prosecuted.

Farnham, Clark & White's addition to Urbana, now in the business district of Champaign, was laid out and platted in 1855. Neil street runs north and south east of block 7 and Park street is on the south side of the block, and there is an alley running east and west through the center of the block. The space between the alley and Park street is filled by lots 11 and 12, each with a frontage of 66 feet on Neil street and running back west 132 feet. These lots were owned in 1859 by J. P. Gauch, and on January 13, 1859, he conveyed the east 122 feet of the south 22 feet of lot 11 to Andrew Hallinan, "with an alley on the west end of said lot, ten (10) feet wide." On September 7, 1859, Gauch conveyed the east 122 feet of the middle 22 feet of lot 11 to Elihu T. McCann, "with a ten (10) foot alley on the west end of said lot." On April 10, 1860, Gauch made a conveyance to James Gunning, describing the north 22 feet of lot 11 by metes and bounds, which made the south line 122 feet and the north line 132 feet, which was an inaccurate description, followed by this definite description: "Said party of the first part saving

287 — 24

and reserving for public use, viz., for an alley, ten (10) feet of the entire west end of said twenty-two (22) feet, leaving said land so conveyed 22 feet by 122 feet." On September 23, 1863, Gauch conveyed the east 122 feet of the north 22 feet of lot 12 to Reinard Blum, "with a ten (10) foot alley running along the west end of lot as aforesaid," and that part of lot 12 is the north one-third of the defendant's property. On September 8, 1864, Gauch conveyed the remainder of the property, being the south 44 feet of lot 12, to Thomas A. Cosgrove, "provided that ten (10) feet off from the west end of said lot shall be kept open as an alley." This 44 feet is the south two-thirds of the defendant's property. By subsequent conveyances the complainants, Algie P. Gulick and Seeley C. Gulick, became the owners of the parcels conveyed to Hallinan and McCann, being 44 feet of the east 122 feet of lot 11, adjoining the defendant's property on the north, and they erected on that property a business building. By subsequent conveyances the defendant became the owner of the portions of lot 12 conveyed by Gauch to Blum and Cosgrove, with a frontage of 66 feet on Neil street, the record title to the west 10 feet of the premises conveyed to Blum remaining in Gauch subject to the easement for an alley, and the fee of the Cosgrove portion being in the defendant subject to the provision for keeping the 10 feet off from the west end open as an alley. The strip throughout its length was kept open and used as an alley and never obstructed so as to interfere with such use until the defendant commenced the erection of a business building covering the whole of lot 12. In 1884 the Champaign Armory Company acquired title to the premises now owned by the defendant and erected thereon an armory covering lot 12 to the depth of 122 feet and leaving the 10 feet unoccupied. In 1889 the Walker Opera House Company acquired title to the same property and used the building for an opera house. About 1904 or 1905 the opera house company built an extension to the upper

part of the building for dressing rooms, extending over the 10-foot strip and somewhere from 14 to 20 feet above it. The extension was of boards covered with corrugated iron, supported on cast-iron columns on cement foundations, leaving the passageway unobstructed. The defendant obtained title from the opera house company by a deed of June 3, 1911, and afterward tore down the opera house and the property was vacant for some time. In the latter part of 1914 the defendant planned the erection of a hotel on his property, with the intention of leaving the alley open at the back, as he testified, for bringing in baggage, but he gave up that scheme and planned the erection of a business building three stories high covering the whole of lot 12. He excavated for the foundation in the alley as for the rest of the lot, and had begun the construction when he was notified that the obstruction would not be permitted, and this suit was begun. He continued the work and completed the building during the pendency of the suit.

The existence of a mortgage on the defendant's premises, or any question as to the mortgagee being a necessary party to the suit, was not stated or raised in any way by the pleadings but was introduced by the statement of the master in chancery. The mortgage was made on June 17, 1915, and filed for record on June 29, 1915, nine days before the bill was filed. Generally speaking, all persons materially interested, either legally or beneficially, in the subject matter of a suit in equity and the relief asked for, must be made parties, and the non-joinder of a defendant whose interest will be materially affected by the decree may be raised for the first time on appeal, but when so raised it is never favored, and if a decree may be sustained without materially affecting the interest of an omitted party the decree will not be reversed. If the interest of an omitted party in the subject matter of a suit and the relief sought is so bound up with that of the other parties that his presence is an absolute necessity the court will reverse the de-

·cree, not on account of the defendant who makes the objection for the first time on appeal but because no effective decree can be made. That rule only applies where the interest is a present substantial one and where a decree will result in depriving the omitted party of some material right without a hearing. (*Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 109 Ill. 71; *State Nat. Bank of Springfield* v. *United States Life Ins. Co.* 238 id. 148; *Pease* v. *Chicago Crayon Co.* 235 id. 391; *Granquist* v. *Western Tube Co.* 240 id. 132.) A proceeding for an injunction is personal against the individual, and the mortgagee was not erecting the building or participating in it and had no present interest to be affected by the decree. If the defendant should be permitted to improve the mortgaged property by extending his building over the 10-foot strip the security would be increased, but the defendant testified that the naked property, without any improvements, was worth $85,000 and the mortgage was for $37,000. The defendant was the one, and the only one, responsible for the alleged wrong, and the injunction sought was personal against him. Under these circumstances the mortgagee was not a necessary party. *Turpin* v. *Dennis,* 139 Ill. 274; *Peoria Railway Co.* v. *Peoria Railway Terminal Co.* 252 id. 73; *Zerban* v. *Eidmann,* 258 id. 486.

J. P. Gauch owned lots 11 and 12 in 1859. They together constituted the tract of 132 feet square, with streets on the east and south and an alley on the north. The property was in a business section, and he divided the lots into five parcels and conveyed successively the east 122 feet of the north four parcels, retaining the fee in the 10-foot strip in question and granting as appurtenant to the part conveyed an easement for an alley over the strip retained. He finally conveyed the fifth parcel,—the south 44 feet of lot 12,—with a reservation of 10 feet off of the west end to be kept open as an alley. The original plan of Gauch is not in doubt nor the method by which he carried it out,

and the easements for an alley were appurtenant to the property conveyed. An easement is never construed to be in gross and purely personal when it can fairly be construed to be appurtenant. (*Kuecken* v. *Voltz,* 110 Ill. 264; *City of Chicago* v. *Borden,* 190 id. 430; 9 R. C. L. 741.) An easement which is appurtenant runs with the land and passes by a conveyance without any reference to it. (*Morrison* v. *King,* 62 Ill. 30; *Shelby* v. *Chicago and Eastern Illinois Railroad Co.* 143 id. 385; *Jarvis* v. *Steele Milling Co.* 173 id. 192; *Schmidt* v. *Brown,* 226 id. 590.) Where the owner of a tract of land has divided it into different parts, as lots and alleys or ways, in such a manner that one part derives from another an advantage of a permanent, open and physical character, and the owner afterwards sells a part of the property, the purchaser takes the part sold with all the benefits and burdens which appear at the time of the sale. (*Cihak* v. *Klekr,* 117 Ill. 643; *Hankins* v. *Hendricks,* 247 id. 517.) Gauch owned all of the premises, with streets on two sides and an alley on another, and divided the premises and arranged the different parts with a provision for an alley, which could only mean a 10-foot way for the common uses of an alley across the west end of the property. The easements granted in the first four conveyances and the reservation in the fifth were for an alley, and the deeds cannot be interpreted otherwise than that there should be an alley 10 feet wide for the use of the grantees.

The master found that the travel was not confined to any particular strip of ground, and perhaps the travel digressed to some extent beyond the limits of the alley, but there never was a time when the alley was not in use as such, and travel was confined to a strip across the property now owned by the defendant after 1904 or 1905, when the opera house company put up the pillars supporting the dressing rooms overhead. The fact that the opera house company was permitted, by sufferance, to extend its dress-

ing rooms over the alley, supported by columns and not interfering in any way with the use of the alley, did not bar the right of the complainants. The complainants had areaways extending into the alley about nine inches and the unloading· chute extended out a little over three feet, but neither was any obstruction to the use of the alley and their existence was not relied upon in the answer or pleaded as an estoppel to claim an alley. While the complainants had no right to maintain the areas or chute and could be compelled to remove them, the fact that they were permitted by sufferance and did not interfere with the beneficial use of the alley did not destroy the complainants' right.· *Yeager* v. *Manning,* 183 Ill. 275; *Thorworth* v. *Scheets,* 269 id. 573.

To maintain and protect the complainants' right to the alley will result in considerable expense to the defendant. He, however, had his election to first have his right determined or to proceed with the construction of his building with the knowledge that he might be compelled to restore the alley. (*Lambert* v. *Alcorn,* 144 Ill. 313.) There was no preliminary injunction, but the only office of that writ is to preserve the existing condition until a final hearing, and the complainants were at liberty to apply for such a writ or not, as they saw fit. When the defendant was notified not to obstruct the alley he could have restored it at small expense. He had notice of the existence of the alley and the right of the complainants by his own chain of title and was not entitled to any other notice not to invade that right. The defendant could not by completing his building deprive the court of the right to compel restoration of the status. (*Turney* v. *Shriver,* 269 Ill. 164.) The duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of expense to the wrongdoer.

The decree is reversed and the cause remanded, with directions to grant the relief prayed for in the bill.

*Reversed and remanded, with directions.*