HARRY E. WOODS, Appellee, *vs.* HANNAH YOUNGREN, Appellant.

*Opinion filed April 20, 1916.*

1. APPEALS AND ERRORS—*when a decree will not be reversed on facts.* A decree in accordance with findings of fact by the chancellor, based upon the conflicting testimony of witnesses heard in open court, will not be reversed by the Supreme Court as not sustained by the evidence unless the findings are clearly erroneous.

2. CONTRACTS—*what is ground for setting aside contract as a cloud.* Where a contract for the sale of land provides that it is to be held by a third person for the benefit of the parties pending the performance of certain things, the recording of the contract without the consent of the parties is ground for setting it aside as a cloud on the title of the proposed vendor and in refusing to specifically enforce it on the cross-bill of the vendee, particularly where there is evidence of unfairness connected with the contract.

APPEAL from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

H. G. COLSON, for appellant.

MOSES, ROSENTHAL & KENNEDY, (WALTER BACHRACH, and SIGMUND W. DAVID, of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellee, Harry E. Woods, filed a bill in the circuit court of Cook county May 1, 1914, praying for the removal of a cloud upon the title of property owned by him and

described as lots 7 and 8, block 4, in Morton Park, a subdivision of the northeast quarter of section 28, town 39, north, range 13, east of the third principal meridian, in Cook county, Illinois. The cloud consisted of a contract on file in the recorder's office of Cook county, entered into between appellee and appellant, Hannah Youngren, September 7, 1911, by the terms of which appellee agreed to sell, and appellant to buy, said lots 7 and 8 for the sum of $615. The bill of complaint alleges the contract above referred to is inoperative and void, having been obtained through the trickery and fraud of appellant and her agent. Appellant answered the bill, denying the contract was obtained by trickery and fraud, and filed a cross-bill asking for the specific performance of the same. The bill of appellee by stipulation stood as an answer to the cross-bill and was amended on the trial, alleging appellant was guilty of *laches* in the performance of the terms of the contract and hence not entitled to the relief prayed in her cross-bill. The cause was heard by the chancellor and the relief prayed in the original bill was granted and the cross-bill dismissed for want of equity. This appeal followed, and the only ground urged for reversal is that the decree is not supported by the evidence.

It appears from the evidence that appellee is the owner of the lots in question; that his wife, Harriet S. Woods, as agent, in August, 1910, gave to one Zbetovsky the right to sell the property. Mrs. Woods had the abstract to the lots and gave the same to Zbetovsky about September 18, 1910. Some time during the month of October Mrs. Woods learned that appellant was the prospective buyer and that a Mr. Krueger was appellant's agent. An objection was made to the title shown by the abstract concerning a certain unreleased trust deed. This was the only objection of which appellee had knowledge, and it was cured May 20, 1911, and the appellant's agent, Krueger, was so notified. Krueger had written an opinion of title making some minor

objections besides the one with reference to the trust deed, but Mrs. Woods testified neither she, appellee nor Zbetovsky had ever seen the opinion or knew what the other objections were, although repeated requests had been made for the same. These negotiations between Mrs. Woods, her agent, Zbetovsky, and the real estate firm of Griffenberg & Buck, who officed in the same room with Zbetovsky and had been taken into the deal by him, on the one hand, and appellant and her agent, Krueger, on the other, dragged along during the spring and summer of 1911 although repeated demands were made by Mrs. Woods that the deal be closed. On September 2, 1911, she notified all interested parties that if there was going to be any transfer of property the transaction must be concluded not later than September 7, 1911. On the morning of that day Mrs. Woods called on appellant and told her the transaction must be concluded that day. By agreement all the parties met that afternoon at Krueger's office in the court house, where the contract here sought to have canceled of record and removed as a cloud upon the title to appellee's property was entered into. The evidence of what took place at this meeting is very contradictory. Mrs. Woods contends she and appellee brought with them to this meeting a deed to the property, and that at Krueger's request Zbetovsky took their acknowledgments to the deed; that the deed was handed Krueger, who then produced the contract here involved and asked Mrs. Woods and appellee to sign the same. The contract was for the sale of the two lots of appellee to appellant for $615, of which $25 had been paid as earnest money, and the balance, $590, appellant agreed to pay after the title had been examined by her and found good. The contract further provided the vendor should furnish the purchaser a complete merchantable abstract of title brought down to date, and that the purchaser, within ten days after receiving such abstract, should deliver to the vendor a memorandum in writing specifying objections to the title, if

any. The contract provided it and the earnest money should be held by Krueger for the mutual benefit of the parties concerned. Appellee and Mrs. Woods testified they read the contract over, and said that inasmuch as the transaction was to be concluded that day no contract was needed, and that Zbetovsky made a similar statement. Mrs. Woods testified she told Krueger she heard he had raised several objections to the title and that if the contract was signed he might urge such objections; that he stated he would waive such objections; and that he only wanted to satisfy himself that no further instruments than those shown by the abstract had been placed upon record, and that as county auditor he could get the information at once; that the signing of the contract was a mere formality. Appellee, Mrs. Woods, Zbetovsky and Griffenberg & Buck thereupon signed the contract. Krueger and appellee went down-stairs, where Krueger placed the contract on file for record. He and appellee were unable to ascertain from the recorder's office whether any instruments had been placed on record affecting the title to the lots subsequent to the date of the abstract and returned to Krueger's office, where he so informed Mrs. Woods and said nothing could then be done about closing the deal. Mrs. Woods replied that ended the transaction. Krueger then told her he had the contract, and handed her a written opinion stating the objections to the title. Mrs. Woods stated the contract was obtained by trickery and declared the deal off, and she and appellee left the office.

Appellant's and Krueger's statements of what took place at this meeting are, that it was Mrs. Woods who insisted upon the contract being signed, and that the contract had been prepared two or three days previous by Buck at the request of Mrs. Woods. Krueger testified he told Mrs. Woods there was no need of the new agreement; that on his informing Mrs. Woods the recorder could not make the continuation of the abstract that afternoon she became much excited and demanded a return of the contract. He

testified he told her he could not do that, as he held the contract and earnest money in escrow. He testified he then counted out $590, the balance of the purchase price, and tendered it to Mrs. Woods, requesting a deed showing good title and a compliance with the terms of the contract, but that Mrs. Woods refused to take the money and the meeting ended. These statements of Krueger are denied by Mrs. Woods.

The testimony is contradictory as to whether any demand was subsequently made upon appellee for the delivery of an abstract and that the contract be carried out, appellant claiming a letter to this effect was sent to appellee November 2, 1911, while appellee claims it was not until December, 1912, that appellant, in answer to a letter of appellee asking that the contract be canceled of record, stated that she was willing and able to carry out the contract. No action was taken by appellant to enforce the contract until she filed her cross-bill to this suit, begun by appellee in May, 1914, seeking to cancel the contract of record and remove it as a cloud on appellee's title.

No benefit could be derived from a further recital or review of the evidence in this case. It is most contradictory and conflicting and cannot be reconciled. The chancellor, with the witnesses before him, was better able to determine the credibility to be given the testimony that is a reviewing court, and the finding of a chancellor upon questions of fact, based upon the statements of witnesses whom he saw and heard testify, will be accepted by this court unless found to be clearly and palpably erroneous. (*Kinnah* v. *Kinnah,* 184 Ill. 284; *Lasher* v. *Loeffler,* 190 id. 150; *Higgins* v. *Wisner,* 170 id. 220.) We cannot say the decree is not supported by the evidence. If the contract was procured to be signed under the conditions and circumstances testified to by the witnesses for appellee the chancellor was clearly warranted in the findings and conclusions set forth in the decree. (*Cowan* v. *Curran,* 216 Ill. 598.) The re-

cording of the contract by Krueger (which the contract recites and which he testified he held for the benefit of both parties) without the consent of the parties justified the court in refusing to enforce its specific performance and in setting it aside as a cloud upon the title to the property. *Sugar* v. *Froehlich,* 229 Ill. 397, and cases there cited.

We are of opinion the decree is contrary neither to the evidence nor the law, and it is affirmed.

*Decree affirmed.*