---

(No. 14870.—Reversed and remanded.)
OTTO WIEDERHOLD, Appellant, *vs.* ALIDA MAY WIEDER-HOLD, Appellee.

*Opinion filed December 19, 1922.*

1. EVIDENCE—*testimony of attorney in behalf of his client is entitled to little weight.* Where an attorney assumes the double burden of representing his client and furnishing evidence to insure success in the litigation little weight is to be given to his testimony.

2. DIVORCE—*when court will set aside deed from complainant to his wife.* Where a transfer of property is procured by a wife from her husband under circumstances from which it can reasonably be inferred that she contemplated an abandonment of her marital duties after securing the conveyance, a court of equity, in a suit by the husband for divorce and to cancel the deed, will restore the property to the husband, where the uncontradicted evidence shows that the wife did abandon her marital obligations and continued a course of conduct naturally leading to separation.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE F. RUSH, Judge, presiding.

TRAINOR & TRAINOR, for appellant.

ROBERT A. MEIER, JR., (HARRY A. GOLDSMITH, of counsel,) for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

December 8, 1920, appellant filed his bill in the circuit court of Cook county, which, with amendments subsequently made, alleges that he was married to appellee October 25, 1893; that until November 3, 1920, he maintained a home for her and always conducted himself toward her as a good and faithful husband; that on one occasion she left his home and lived for about a year with John Carpenter; that on divers other occasions she left her home for shorter periods of time; that she has not been faithful to him and has conducted herself in a manner unbecoming a wife; that on many occasions she has been guilty of cruelty toward him; that November 3, 1920, in the city of Long Beach, California, she, with the assistance of other persons, severely beat and wounded him, at the same time asserting that she would kill him; that he was rescued by the police and his neighbors who heard the threats of his assailants and his cries for mercy; that appellee became acquainted with Ida Ford Hallock in 1918, and that since that time she has frequented public dances with said Hallock and has accompanied her on trips, when they spent their time in hotels; that appellee filed in the city court of Chicago Heights, in 1918, a suit for divorce alleging cruelty; that the charges were not true but that he loved his wife and desired to continue to live with her; that his wife agreed to dismiss the suit, to discontinue her relations with the Hallock woman and to live with him as a dutiful wife should, if he would provide by will that his property should go to her at his death; that at the suggestion of her attorney deeds were executed conveying his property to him and his wife in joint tenancy; that these deeds were void for want of consideration and for want of delivery and that they were obtained by the false and fraudulent representations of the appellee. The bill prays that an absolute divorce be granted and that the deeds be set aside and declared void.

A decree was entered granting the divorce but denying the relief asked with respect to the deeds. From that decree this appeal is prosecuted.

Appellant testified that he was fifty-four years old; that he had lived in Chicago Heights all his life; that he was married in Davenport, Iowa, October 25, 1893; that a son was born to this marriage; that this son, who is twenty-six years of age, was driven from his home by appellee and is now living in New York; that appellant is a cabinet maker and for some years has been employed by the Hamilton Piano Company; that he has always given all his earnings to his wife and that she has possession of whatever money she has saved; that for several years his wife had begged him to take her to California on a pleasure trip; that he did not want to make the trip and tried to dissuade her; that in August, 1920, she, with Mrs. Hallock, purchased tickets to California and told him that he must go with her or she would go alone; that he yielded and went to California, where he secured employment in a garage; that the appellee and the Hallock woman frequented public dances and saloons; that during the night of November 2 she talked in her sleep; that he awakened her and told her to keep still; that the next morning she insisted that he tell her what she said during the night; that he did not want to tell her; that she insisted and that he asked her not to be angry if he told her; that he told her that she had talked about eloping with someone; that she hit him in the mouth with her fist and threw a cup and saucer at him; that Mrs. Hallock came to their house later in the day; that when she came in she said, "I have come here to fight; I am going to kill you;" that he told her to get out of his house; that appellee struck him with a chair, shouting, "We have planned this for three years and we will kill you!" that Mrs. Hallock's husband, John, came in and passed chairs to the women; that the neighbors heard the screaming and called the police officers; that the women were arrested and taken

to jail; that he returned to Chicago Heights, and that after he had recovered sufficiently from his injuries he began his suit for divorce. With respect to the deeds he testified that his wife agreed to discontinue her association with the Hallock woman and to live with him as a wife should if he would will his property to her; that he went with her to the office of her attorney; that the attorney told them that the property should be conveyed by deed and not by will; that he wanted to get an attorney to represent him and that her attorney said it would be unnecessary; that the attorney agreed to prepare papers which would convey the property to her at his death; that the instruments were made and executed; that her attorney took the acknowledgments; that the deeds were left with a banker to be delivered to him at his request; that he obtained the deeds from the banker when he went to California; that these deeds were taken from his grip by his wife without his knowledge or consent and sent to the recorder to be recorded, and that the first knowledge he had of the instruments being recorded was when the recorder of Cook county sent the deeds to him by mistake.

Robert A. Meier has been the personal attorney of appellee since the trouble between the parties began, in 1918. He filed her first bill for divorce, he took care of all the details of the settlement, he dismissed her bill, he filed her answer to appellant's bill for divorce, and he secured an order granting him solicitor's fees and an order directing appellant to pay to appellee $100 to enable her to come to Chicago to appear as a witness at the hearing. Appellee did not appear and no reason is shown for her failure to appear. Meier, who appeared throughout this litigation as the attorney for appellee and who represents her in this court, caused himself to be sworn as a witness and testified on behalf of appellee. He does not contradict the testimony of appellant in any material matters, and if he did, we would not give much weight to his testimony. We have

repeatedly said that when an attorney assumes the double burden of representing his client and furnishing evidence to insure success in the litigation little weight is to be given to his testimony. *Eshelman* v. *Rawalt,* 298 Ill. 192; *Wright* v. *Buchanan,* 287 id. 468; *Ravenscroft* v. *Stull,* 280 id. 406.

The testimony of appellant that appellee promised him that she would never associate with the Hallock woman again; that she would come home to him and live with him as a good and faithful wife; that he made and executed the deeds believing these representations to be true and because of these representations; that appellee never discontinued her relations with the Hallock woman; that she continued to treat him cruelly; that she said on the night of November 3, 1920, when she severely beat and wounded him with a chair and threatened to take his life, that they had planned to kill him for three years, stands uncontradicted in this record. Where a transfer of property is procured by a wife, attended with circumstances from which it can reasonably be inferred that she contemplated an abandonment of her marital duties after securing such conveyance, a court of equity will grant relief and restore the property to the husband. (*Fischer* v. *Fischer,* 245 Ill. 426; *Coonce* v. *Coonce,* 296 id. 585.) The uncontradicted evidence in the record shows that the conveyances in question were made in consideration of appellee's promises to treat appellant kindly and discharge her duty to him as his wife, and it also shows that she did not fulfill her marital obligations but that she continued a course of conduct which would naturally lead to separation. A court of equity has ample power to relieve against such a fraud as is shown by this record, and we are impressed with the conviction that that power ought to be exercised in this case.

The decree is reversed and the cause remanded to the circuit court of Cook county, with directions to enter a decree granting the relief prayed.

*Reversed and remanded, with directions.*