(No. 23573.—

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant, *vs.* THE COMMERCE COMMISSION *ex rel.* The Brotherhood of Railroad Trainmen, Appellee.

*Opinion filed June 17, 1936—Rehearing denied October 13, 1936.*

214

J. C. James, Sidney F. Blanc, J. A. Gillen, and Russell B. James, (Bruce Scott, of counsel,) for appellant.

Otto Kerner, Attorney General, and Irvin Rooks, (Lee A. Freeman, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook county confirming an order of the Illinois Commerce Commission requiring the Chicago, Burlington and Quincy Railroad Company to construct and maintain a stairway for the use of yard employees at its Western avenue train yard, in the city of Chicago, from the street level of Eighteenth place to the yardmaster's office.

Western avenue runs north and south and crosses under appellant's tracks by means of a subway. The railroad right of way is on a fill about twenty-five feet high and crosses over Western avenue in a northeasterly and southwesterly direction. That part of Eighteenth street lying east of Western avenue abuts upon and parallels the right of way for some distance and then runs due east. Eight tracks occupy the right of way across Western avenue, numbered from north to south. Track 1 is used by west-bound passenger trains. Track 2 is used by passenger trains in both directions, except that during rush hours in the morning it is used only by east-bound trains. Track 3 is used for east-bound passenger service. Track 4 is used by freight trains. Operations may be varied as exigencies require. The other four tracks are switch-tracks connected with the train yards east of Western avenue. Some of the switching into the yards is accomplished by gravity. West-bound passenger trains stop at a station and platform north of track 1, on the east side of Western avenue. East-bound passenger trains stop at a platform between tracks 2 and 3. There is a picket fence between tracks 1 and 2 to prevent crossing. Stairways from Western avenue lead up to the station platforms. The yardmaster's office is on the fill south of track 8, about 120 feet southeast of the station platforms. The south side of the south retaining wall of the fill coincides with the north line of Eighteenth street. The estimated cost of the stairway is about $1800. If erected it would be in the street. The city of Chicago was

not made a party to or notified of the proceeding. An alleged discrepancy in describing Eighteenth street as Eighteenth place will be later noticed.

Besides suburban and through passenger service there are foreign freight trains into and out of the yards and heavy switching operations during the entire twenty-four hours of the day. No complete schedule of train operations is maintained and there is nothing to give notice of approaching trains or cars. Two switch-engines work there regularly. One of them works practically all the time. About eighty-eight yardmen are employed. They are required to report to the yardmaster's office on coming to and leaving work. The only way to reach or leave the office in so doing is by crossing the tracks between it and the platforms. If the proposed stairway is installed the employees will be relieved of that necessity. At least seventy-five per cent of them use the suburban passenger service. One of them was killed on April 6, 1934, while crossing the tracks to report for duty. Appellant's records show no other accident there since 1906.

Appellant's division superintendent testified that there are a large number of children in the neighborhood, some of whom come upon the right of way to pick up fuel; that they can come up by the Western avenue stairs; that the management apprehends the proposed stairway may be used by them and by outsiders to make short cuts to the platforms, endangering their lives; that it would be impracticable to maintain a locked gate there with access to employees only; that appellant has experienced trouble from trespassers using stairways at other points; that the use of the proposed stairway by employees in seeking train service would necessitate their using the other stairs and traveling about 415 feet instead of 120 feet, and he doubted they would do so.

This cause reached the circuit court by appeal after appellant's application for a rehearing was denied by the com-

mission. Appellant urges that the order, and the provisions of the statute under which it was entered, contravene the Federal and State constitutions. By section 67 of the Public Utilities act (Cahill's Stat. 1933, chap. 111a, par. 86,) as then in effect, it was provided that any party to the proceeding may apply for a rehearing by the commission in respect to any matters determined in such proceeding and specified in the application for rehearing. No appeal could be allowed until such an application was filed and acted upon by the commission. The record does not show that this constitutional question was presented to the commission at any time or to the circuit court. It therefore can not be urged here. (*People* v. *City of Waukegan,* 344 Ill. 60; *Phelps* v. *Board of Appeals,* 325 id. 625.) What is here said applies to the claims that the complaint and order are ambiguous and uncertain and that the order conflicts with the provisions of the Railway Labor act of Congress.

Section 50 of the Public Utilities act (Ill. State Bar Stat. 1935, chap. 111a, par. 65,) provides in part: "Whenever the commission * * * shall find that additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility * * * ought reasonably to be made, or that a new structure or structures should be erected, to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities, the commission shall make and serve an order directing that such additions, extensions, repairs, improvements or changes be made, or such structure or structures be erected in the manner and within the time specified in said order."

The first paragraph of section 57 of the same act provides: "The commission shall have power * * * to require every public utility to maintain and operate its plant, equipment or other property in such manner as to promote and safeguard the health and safety of its em-

ployees, passengers, customers, and the public, and to this end to prescribe, among other things, the installation, use, maintenance and operation of appropriate safety or other devices or appliances including interlocking and other protective devices at grade crossings * * * and * * * systems of signaling, to establish * * * standards of equipment, and to require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand." Section 32 imposes such duties upon public utilities.

Under the claim that the commission was without jurisdiction to enter the order, it is contended there is nothing which authorizes such an order in either of the sections mentioned. It is urged that the objective of the legislature was to enable the commission to enforce the duty of utilities to furnish adequate service to the public; that the powers granted are limited to matters in which the public has an interest; that there is neither allegation nor proof that the public has any interest in this proceeding, but the benefits of the proposed stairway would be confined merely to a group of employees. Appellant relies upon expressions in three decisions of this court and in two cases decided by the United States Supreme Court. In *Public Utilities Com.* v. *Noble*, 275 Ill. 121, we said: "The purpose of this act was to bring under public control property which was being applied to public use, the owner of such property being required to submit to its control by the public to the extent of its interest as long as the public use is maintained." In that case the question was whether or not a telephone exchange to be constructed outside a village by certain individuals, not only for service among themselves, but to connect with commercial lines, was a public utility. We held that it was. Under an analogous issue in *State Public Utilities Com.* v. *Bethany Mutual Telephone Ass'n,* 270 Ill. 183, we said: "The purpose of the act is to bring under control by the public, for the common good, prop-

erty applied to a public use in which the public has an interest." Obviously those cases have no relation to the question here.

In *Kennedy* v. *Public Utilities Com.* 286 Ill. 490, the only issue was whether or not, in the absence of any statutory requirement, an appellant could be required to advance to the commission the costs of preparing the record on appeal. In holding that the statute imposed the duty upon the commission of filing the transcript within a specified time, without any provision as to costs, we said: "The purpose of the act, as declared in the title, is regulation of public utilities, and the whole object of the act is to secure to the public proper and efficient service by public utilities at uniform and reasonable rates. * * * It ought not to be presumed that the General Assembly intended to add to the necessary burden and expense the payment of a substantial sum of money as fees to the commission for the privilege of having a judicial determination whether its order is lawful or reasonable." How that decision could be persuasive in this case is not made to appear.

In *Northern Pacific Railway Co.* v. *North Dakota,* 236 U. S. 585, 59 L. ed. 735, the legislature of North Dakota fixed certain rates for intrastate transportation of coal. The Supreme Court of the United States held that where a commodity or class of traffic has been segregated and a rate imposed compelling the carrier to transport it for less than the proper cost, or virtually at cost, the State exceeded its authority. In the course of the opinion it is said that the duties imposed upon a carrier are "public duties, and the State, within the limits of its jurisdiction may enforce them. But * * * the fact that property is devoted to a public use * * * does not justify * * * the imposition of restrictions that are not reasonably concerned with the proper conduct of the business according to the undertaking which the carrier has expressly or impliedly assumed. * * * The public interest cannot be

invoked as a justification for demands which pass the limits of reasonable protection and seek to impose upon the carrier and its property burdens that are not incident to the engagement."

· Similarly, in *Lake Shore and Michigan Southern Railway Co.* v. *Smith,* 173 U. S. 684, 43 L. ed. 858, a regulation as to the sale of mileage books without regard to the total income of the carrier was condemned. In that case the court said that the authority to legislate in regard to rates comes from the power to prevent extortion or unreasonable charges by common carriers "exercising a calling or using their property in a manner in which the public has an interest." Nothing said in either of those cases tends to show that a regulation for the benefit of employees does not entail the public interest.

It is to the interest of the State to have strong, robust, healthy citizens capable of self-support, of bearing arms and of adding to the resources of the country. Laws to effect this purpose by protecting employees are held to have an obvious connection with the public welfare. The physical welfare of the citizen is a subject of so much importance to the State, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power. (*Holden* v. *Hardy,* 169 U. S. 366, 42 L. ed. 780; *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423, 87 N. E. 229; *Ex parte Boyce,* 27 Nev. 299, 75 Pac. 1; *People* v. *Havnor,* 149 N. Y. 195, 43 N. E. 541.) The legislature is vested with a large discretion to determine what measures are necessary to secure public welfare. (*State* v. *Kievman,* 116 Conn. 458, 165 Atl. 601.) Such statutes are upheld if possible, and it is only when the legislature goes beyond its power that they are declared invalid. (*Vallat* v. *Radium Dial Co.* 360 Ill. 407.) Under the police power the legislatures of the different States have enacted laws for the safety of workmen by providing for fire-escapes, enclosing dangerous machinery,

regulation of passenger and freight elevators, health measures, factory and mine inspection and regulation, and other means of safeguarding employees. It is as much a matter of public welfare to protect employees from injury as it is to conserve their health. In addition to the protection afforded workmen, such measures promote the general welfare by tending to prevent employees from becoming public charges by reason of accident or disease contracted through their employment. The police power is inherent in the State. In the exercise of this power the legislature may enact laws which promote the general welfare, even though such laws interfere with the liberty or property of an individual and every presumption is in favor of the validity of such acts. (*Fenske Bros* v. *Upholsterers Union,* 358 Ill. 239; *People* v. *Anderson,* 355 id. 289.) Sections 50 and 57 of the Public Utilities act expressly authorize regulations for the safety of employees. The order is within the terms of the statute, and the subject matter is of public interest. This likewise disposes of the claim that the order is invalid as usurping functions for the details of management of appellant's property.

The Public Utilities act does not vest the commission with such arbitrary powers as will result in a confiscation of the property of a public utility, and it provides that the orders of the commission are subject to review by the courts. (*Superior Motor Bus Co.* v. *Community Motor Bus Co.* 320 Ill. 175; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 id. 87.) We have repeatedly held that a review of such orders is limited to a determination of whether the commission acted within the scope of its authority, whether the order has substantial foundation in the evidence, and whether the order infringes any substantial right of the parties. Unless manifestly against the evidence the finding of the commission is conclusive on the courts. (*O'Keefe* v. *Chicago Railways*

*Co.* 354 Ill. 645; *Pioneer Creamery Co.* v. *American Express Co.* 348 id. 30; *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 id. 412; *County of St. Clair* v. *Pennsylvania Railroad Co.* 342 id. 646.) The order is not void because unreasonable with no facts in evidence to support it.

In addition to the evidence already noticed, there was testimony tending to show the employees will use the proposed stairway, and that the complaint was filed at their request. It was shown that the stairway would be subject to closer observation than the present stairways to the platforms, and that it would be a simple matter to prevent children and trespassers from incurring any hazard by its use. It is admitted that the cost of installation and maintenance are of secondary importance. The fact that only one employee has been killed is not of itself sufficient to show that a dangerous condition does not exist. Nor does the fact that the employees are engaged in a hazardous occupation tend to sustain appellant's contention. When a hazard is shown to exist and may be eliminated without unreasonable expense or imposing onerous conditions, it is not necessary to wait until casualties result before requiring the evil to be remedied, even though other hazards necessarily incident to the business still remain. (*Brotherhood of L. F. and E.* v. *Mobile and Ohio Railroad Co.* 362 Ill. 122; *Town of Sidney* v. *Wabash Railway Co.* 333 id. 126.) On the whole evidence the order is neither arbitrary nor unreasonable, and the findings are supported by substantial evidence.

The claim that the order fails to make sufficient findings of fact cannot be upheld. It finds and sets out all the facts essential to show the hazard to employees and that the proposed improvement will eliminate the danger. It was not necessary that a particular finding be made as to each evidentiary fact or claim. *Chicago North Shore and Milwaukee Railroad Co.* v. *Commerce Com.* 354 Ill. 58.

There remains to be considered the claim that the proceeding and order are void for want of a necessary party, the city of Chicago. It is urged that the city might refuse to issue a permit to build the stairway in the street and appellant could not by *mandamus* compel it to do so. The same contention was raised in the petition for rehearing. The petition did not allege, and it is not claimed, that the city would refuse to issue the permit. Appellee asserts in its brief that the permit has been granted by an ordinance, but we can take no notice of matters *dehors* the record.

Appellant knew of the defect in parties ever since it was notified of the filing of the complaint but at no time raised the question until the rehearing. When objection to non-joinder is not made until the final stage of a proceeding it will receive little favor by the courts, and in such case, to be of avail, it must appear that a decree or order will have the effect of depriving the party omitted of its legal rights. (*Chicago, Madison and Northern Railroad Co.* v. *National Dock Co.* 153 Ill. 70; *Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 109 id. 71; *Gulick* v. *Hamilton,* 287 id. 367; *State Nat. Bank* v. *United States Life Ins. Co.* 238 id. 148.) The city of Chicago, not being a party to the proceeding, has not been deprived of any legal right. For any illegal or unauthorized invasion of its rights it has an appropriate remedy. The general rule that all parties who have a substantial interest in property in controversy that may be adversely affected by a decree or order should be made parties to the suit is not inflexible but oftentimes its application rests in the sound discretion of the court. (*Suburban Railroad Co.* v. *City of Chicago,* 204 Ill. 306.) Under the circumstances in this record we observe no abuse of that discretion and appellant is in no position to complain of the want of a necessary party.

While the complaint and order mention Eighteenth place, the record clearly shows that Eighteenth street was

meant, and the misnomer was a mere inadvertence. Both parties so treated the matter in the testimony and in all other respects throughout the proceedings. No question was raised about it, and it is now too late to do so. We hold that the proceeding and the order contemplate a stairway on Eighteenth street.

The order of the circuit court upholding the order of the commission was right and is accordingly affirmed.

*Order affirmed.*