(No. 23746.— )
DAVID CRESCIO *et al.* Appellees, *vs.* MARY CRESCIO *et al.*
Appellants.

*Opinion filed February 12, 1937.*

JAMES A. RUSSELL, and WILLIAM ANNAN TAYLOR, for appellants.

HIRSCH E. SOBLE, and FREEMAN & FREEMAN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellants seek review of a decree of the circuit court of Cook county setting aside the will of John Crescio on the ground of lack of testamentary capacity. The cause was heard on a complaint contesting the validity of the will, filed by appellees, who are heirs-at-law of the deceased, and the answers of the appellants, defendants, thereto. The complaint set up the probate of the will, the names of the heirs surviving the deceased, and alleged want of testamentary capacity on the part of the decedent. The answers of the defendants denied lack of testamentary capacity and alleged that the names of the heirs-at-law and legal representatives of the deceased were not correctly stated in the complaint but were correctly stated in the records of the probate court of Cook county. On hearing, the chancellor entered the above mentioned finding and decree. Thereafter the appellants sought a new trial on the ground, among others, that certain therein named heirs-at-law of the decedent were not made parties to the proceeding. They urge here that for that reason the circuit court did not have jurisdiction to enter the decree. They also seek a reversal of the decree on the ground that the finding of the chancellor was against the weight of the evidence, and that errors occurred in the admission of evidence.

It does not appear from this record that the appellants raised the question of want of necessary parties either by demurrer or motion or in any other way definitely calling that matter to the attention of the chancellor. The denial in the answer that "the names of the heirs-at-law and legal representatives are correctly alleged in the amended complaint and states that the names of the heirs-at-law and legal representatives of the decedent are correctly stated in the records of the probate court of Cook county relating to the estate of the decedent" was not equivalent to a demurrer or motion to strike, nor did such denial and allegation raise the question of want of necessary parties.

That question was definitely raised for the first time on motion for a new trial.

In *Manufacturing Co.* v. *Wire Fence Co.* 109 Ill. 71, it was announced that where objection to the non-joinder of necessary parties as parties defendant in chancery is not taken by demurrer or by plea or answer and is first made at the final hearing, such objection is not favorably received, and in such case to be of avail it must appear that the decree will have the effect of depriving the omitted party of his property rights. In *Gulick* v. *Hamilton,* 287 Ill. 367, it was held that where the interest of an omitted party in the subject matter of a suit and the relief sought are so bound up with that of the other parties as to make his presence absolutely necessary, the court will reverse the decree not on account of the defendant who makes the objection for the first time on appeal but because no effective decree can be made. Such rule, however, applies only where the decree will result in depriving the omitted party of some material rights without hearing. In *Krzeminski* v. *Krzeminski,* 285 Ill. 113, the decree of the circuit court setting aside a will was attacked here on the ground, among others, that there was a failure to make one or more children of the testator parties defendant to the bill. The will had given the entire estate to the widow, and it was again held that the widow, who was appellant, could not complain of errors which did not affect her rights but affected only the rights of others who were not complaining; that none of her rights were denied or prejudiced because certain proper parties were not brought before the court, and that in that case, where the decree set the will aside, the result was of material benefit to the absent parties, and the decree should not be reversed simply in order that the record may be free from error. This court again had occasion to pass upon the matter of the absence of proper parties, in *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com.* 364 Ill. 213, where it was again held that when the objec-

tion to non-joinder is not made until the final stages of the proceeding it will receive little favor by the courts, and to be of avail it must appear that the decree or order will have the effect of depriving the party omitted of his legal rights. In this case the heirs-at-law of John Crescio who were not made parties defendant were not devisees or legatees under his will and are materially benefited by the result of the decree. Naturally, they are not complaining here. These facts, together with the failure of the appellants to directly raise the question of the absence of such parties until after the decree was entered, render it inequitable that the parties be put to the expense of a re-trial of this cause merely to cure a technical error in the proceedings. This objection cannot be sustained.

The principal question involved in the case concerns the testamentary capacity of the decedent. On that question numerous witnesses were offered on both sides, their testimony conveying the usual contradictory implications. The hearing was before the chancellor, who was able to observe the demeanor of the witnesses and hear their testimony, and unless his finding was contrary to the manifest weight of the evidence it will be sustained on review. *Oliver* v. *Oliver,* 340 Ill. 445; *Mannen* v. *Norris,* 338 id. 322; *Krzeminski* v. *Krzeminski, supra; Woods* v. *Youngren,* 272 Ill. 521.

From the undisputed evidence it appears that the decedent at the time of his death was seventy-eight years of age; that on May 3, 1934, he entered the West Suburban Hospital, in the city of Chicago, and remained there until his death, on August 7, 1934. The will attacked in this case was executed on July 30, 1934. The testimony in the record centers principally around decedent's condition during the months of June and July while in the hospital. There were eleven witnesses called on behalf of the appellees and eight on behalf of the appellants, including a medical expert on each side. Most of those called testified that they believed that the decedent was or was not of sound

mind and memory at the time of the execution of the will as that question was sought to be determined by the side calling them. Certain record sheets of the hospital were introduced in evidence tending to show Crescio's condition at different times during this period. The evidence shows, without dispute, that the bed in which he lay in the hospital had boards at the side to prevent his getting or falling out, and that at times sheets were tied across his chest and hips to keep him in bed. It is shown by the hospital record sheets that on June 11 he was violent, struck at the nurse with clinched hands, required two nurses and a doctor to restrain him and an injection of morphine to subdue him. The record sheets also show that on June 14 he threw pillows across the room and ripped his bed clothing. On July 8 he refused to eat or take medicine, became extremely excited and noisy, and shouted loudly and struck at the nurses. On July 27 he was very irritable and confused, thought he was being robbed, and later in the day talked continuously. On July 29 the hospital record showed him talking and crying. On July 30, at 4:45 P. M., which was about an hour before the execution of the will, he was very restless and noisy, and again at 8:00 o'clock that evening he is shown talking loudly and striking at the nurses. Witnesses for the appellees testified that they visited him in the hospital during the last few weeks of his illness and that he did not know them but lay staring at the ceiling or would wave his hands and would not reply to questions asked. Other witnesses for the appellants testified that during that period they visited him at the hospital and when asked if he knew them indicated that he did. None, however, testified to a sustained conversation with him except James A. Russell, the attorney who drew the will, who has acted as attorney for the estate in all steps of this proceeding and who testified on the hearing before the chancellor. Russell testified to a conversation of some length on July 30 concerning the will, and also on another visit

which he made to the decedent in the latter part of June, at which time he says the will was not discussed. It appears from one of the hospital sheets, as well as from the testimony of one of the nurses, that at 4:45 on the evening on which the will was executed the nurse administered to the decedent twenty grains of sodium bromide and ten grains of chloral hydrate to quiet him. This nurse testified that at that time the decedent "talked; I don't recall what he said or talked of, it was just of a babble, just a noise that would resound." This was about an hour before the will was executed.

Attorney Russell testified that he went to the hospital on the afternoon of July 30 at the instance of David Crescio, one of the principal beneficiaries under the will; that before going he prepared the will, which he testified to be in accordance with directions given him by the decedent in the witness' office during the month of February or March preceding. He testified the will was not drawn at that time but that on the day that it was executed he drew it from his recollection as to the decedent's direction when in his office, though he had made no notes. Frances Kreissl testified, however, that she was the stenographer for Russell during February or March when the decedent came to the office and asked to see Russell on private business; that after he left she drafted the will at Russell's direction; that the will offered in evidence was the same as that drafted by her and was in the same condition with reference to the typewritten matter. She called attention to the fact that in typing the will she had left a blank space for the word "Mary"—a part of the name of Mrs. Crescio; that about a half hour after the will was typed she filled in the word "Mary," and that the space was left when typing the will for the reason that Russell did not know whether the widow's name was Mary or Marie and called up to find out. An examination of the will offered in evidence shows that more than the required space for the word "Mary" had been left

in the typing of the will. It does not appear from the evidence why Russell, when he had the will typed on July 30, as he testified he did, spaced the name "Mary" as testified to by the witness Kreissl and as appears in the will. These facts tend to indicate that the will was typed in February or March but for some reason was not then executed.

One of the appellants' contentions here is that the court erred in permitting the introduction in evidence of the genuine signatures of the decedent to be compared with his name as it appears on the will. Counsel for appellants say this was improper, for the reason that there was no charge in the complaint that the will was forged. The court admitted this evidence for the restricted purpose of affecting the credibility of the witness Russell as to the facts surrounding the execution of the will. He had testified that the decedent was propped up in bed, and that because the decedent wished him to do so he placed his right hand on the wrist of the decedent to steady it while the latter wrote his name. If the genuine signatures offered in evidence tend to dispute the possibility of the will having been executed in that manner, it was competent to admit them in evidence for the purpose of affecting the credibility of Russell's testimony. An examination of the photostatic copies of the various signatures admitted in evidence discloses that while the genuine signatures were of letters of irregular formation bearing certain characteristics, with capital letters generally sloping to the right, the signature to the will was much smoother and firmer, with the letter characteristics of the genuine signature lacking and with the capitals almost perpendicular. They therefore constitute contradictory evidence concerning the question whether the decedent was capable of signing the will, as testified to by Russell, and so affected his credibility. They were competent evidence.

As we have stated, Russell was the only one who testified to a sustained conversation by the decedent during the

last few weeks of his life, and we are of the opinion, on consideration of all of the evidence on this point as well as the contradictory evidence of the genuine signatures, that the credibility of Russell's testimony is substantially affected. We also again remind the bar that the attorney who assumes the burden of witness while representing his client in a lawsuit does so at a very great detriment to the credibility of his testimony. *Wiederhold* v. *Wiederhold,* 305 Ill. 429; *Wetzel* v. *Firebaugh,* 251 id. 190.

It is also objected that the hospital records introduced in evidence were not properly identified. As to all but one of these records no objection was raised on the trial of the cause and their identification is not a subject of controversy here. As to the other objected to, no objection was urged on the ground of improper identification. The court did not err in admitting them in evidence.

It is the position of the appellants that at the particular moment in which the will was executed the decedent had a lucid interval, and that therefore the will is valid. While Russell and the nurse, who were witnesses to the will, testified that in their opinion he was of sound mind at the time, yet the nurse's opinion is also much affected by her testimony that she had administered strong sedatives to him within an hour before, and by her identification of certain entries on the hospital record sheets as being in her handwriting, which entries have hereinbefore been referred to. Further comment on Russell's testimony is unnecessary.

The chancellor was of the opinion that the evidence showed the decedent to be of unsound mind at the time of the execution of the purported will, and on a review of this entire record we are unable to say that he was in error in his finding and conclusion on that matter.

There being no error in the record, the decree of the circuit court is affirmed.

*Decree affirmed.*